Hattie W. Meyers, Plaintiff, Appellee, v. John C. Bowers, d/b/a John C. Bowers Co., Defendant, Appellant.

**Gen. No. 49,462.**

First District, Fourth Division.

October 14, 1964.

Ernest A. Eklund, Albert Brown, and Frederick J. Bertram, of Chicago, for appellant.

Robert E. Cherry, of Chicago, for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court:

This is an appeal from a judgment against the defendant for the sum of $1415.18 and costs after a bench trial.

Plaintiff, an owner of real estate, filed suit against her real estate agent for withholding moneys after his management services were terminated. The disputed sum represents 4% on the balance of unexpired leases for rentals to be collected in the future. It is admitted by the pleadings that on July 19, 1949, plaintiff and her husband, Hyman G. Meyers, joint owners of six properties, entered into separate written management agreements with defendant for each of the properties whereby the latter agreed to rent and manage, execute and cancel leases, collect rents, prosecute suits for rent or possession from August 1, 1949, to July 31, 1950, and thereafter until either party gave thirty days written notice to the other. Each of the agreements provided that defendant was to receive for its services "4% of all rents to be collected from said premises" and in the event of termination of the agency, the Meyerses agreed to "pay said agents at the date of said termination 4% of the total rental due or to become due on the unexpired term of leases made or renewed during the period of this agency."

In June of 1950 plaintiff became the sole owner of the real estate after the death of her husband. In the following July plaintiff's son-in-law, a Dr. Scher, testified that he had the following conversation with defendant: *

---

* Defendant testified that he did not have any conversation with Scher in 1950; that he did not know him at that time; that

And I said to him, "Mr. Bowers, this is Dr. Scher, Mrs. Meyers' son-in-law. And I have been appointed supervisor of Mr. Meyers' buildings. I understand that Mrs. Meyers has made arrangements with you that—. . .

"That Mrs. Meyers has made arrangements with you to continue managing her property, and that the arrangements are, you will charge her 4% of the gross income." He says, "That is right." So I said to him, "Now as supervisor of these buildings I want to understand this clearly. Your arrangement is that you are going to charge 4% of the gross income for your managing these buildings?" And he said, "Those are the arrangements. We will charge you 4%."

On May 28, 1960, the three agreements involved in this suit * were terminated by plaintiff effective July 1. Defendant rendered a final rent statement which showed a balance of $637.60 after deducting the 4% commission due on the unexpired leases. A check, payable to Hattie W. Meyers, for this balance was remitted to plaintiff and deposited by her in her bank account.

Plaintiff claims that the alleged conversation of Dr. Scher with the defendant constituted an entirely new agreement of the parties and did not include any reference to a percentage for unexpired leases upon termination of the management contracts.

■ We cannot find that Dr. Scher's statements that he was "appointed supervisor" and that he understood "that Mrs. Meyers has made arrangements with you" created a new oral contract of employment.

---

in 1952 or 1953 he met with plaintiff, Dr. Scher and Mrs. Scher in his office and discussed the general conditions of the buildings and the conduct of defendant's manager.

* The other three properties were sold between 1953 and 1959.

■ It is next urged by plaintiff that the alleged conversation of Dr. Scher terminated the written agreements. However, the doctor testified that he did not know of any written agreements and the plaintiff did not testify.

Three of the six properties were sold by plaintiff during 1953, 1956 and 1958. The final rent statement on each of these three buildings did not include any rental commission charges for the substantial number of unexpired leases. A commission for the sale of one of the properties was paid to defendant.

■ Plaintiff argues that the course of conduct of defendant in not charging the 4% on the unexpired leases on the three properties that were sold constituted a waiver of commissions for the three other premises. At the trial defendant's attorney attempted to elicit from the defendant the reason why the broker did not charge the 4% rental commission fee on the unexpired portion of the leases in the three buildings which had been sold. The court sustained plaintiff's objection to the question. As a result, defendant was foreclosed from explaining the basis for not charging the fee.

Defendant then offered to prove "(1), that as each building is sold, where there are a number of buildings being managed by a real estate firm, they may or may not, at their own discretion, charge the 4% on the unexpired portion of the leases" . . . and "(2) That where they obtain a major portion of the buildings for a continued management they oftentimes will give consideration to a rebate and make no charge; (3) That when the contract was finally terminated and the three buildings were finally taken away from them, they were taken away and given to another real estate firm for management, and at that time he exercised his discretion to operate under the terms of the contract."

The court should have admitted evidence of all the circumstances showing a waiver.

In Columbus Safe-Deposit Co. v. Burke, 88 F 630 (7th Cir), the court in discussing a waiver of a contract provision said on page 636:

> Touching that question, the entire conduct of the parties in reference to the work, changes in the work originally contemplated, contracts for additional work, all that they did, and all that they said to each other, however remote the bearing, was admissible in evidence. . . .

■ However, since there were individual agreements on each of the buildings, a waiver of a provision in one contract could not be considered a waiver of a similar provision in a separate contract.

The amount in controversy was based on the unexpired leases of 46 tenants in three properties, of which 28 had ten unexpired months; 15 had less than ten months, two had 12 months and one had 23 months. The landlord formally terminated the management agreement on May 28 effective July 1. Defendant's exhibits which were not controverted by plaintiff show that on May 1 thirty-one new leases were entered into by defendant and four additional ones thereafter.

We find that the alleged conversation of Dr. Scher neither created a new oral contract nor terminated the written agreements and that there was no waiver by defendant of any commissions by reason of failure to collect these charges on other buildings under separate contracts.

The judgment is reversed and a finding and judgment for defendant entered here.

Reversed and judgment for defendant.

ENGLISH, P. J. and McCORMICK, J., concur.